# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

CRAIG EUGENE BYRNE,     )  CASE NO. 3:14-CV-01633
            )
     Plaintiff,    )  JUDGE ZOUHARY
            )
   v.       )  MAGISTRATE JUDGE
            )  VECCHIARELLI
CAROLYN W. COLVIN,     )
   Acting Commissioner   )
   of Social Security,    )
            )  **REPORT AND**
     Defendant.   )  **RECOMMENDATION**

Plaintiff, Craig Eugene Byrne ("Plaintiff"), challenges the final decision of Defendant, Carolyn W. Colvin, Acting Commissioner of Social Security ("Commissioner"), denying his application for Period of Disability ("POD") and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423. This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation.  For the reasons set forth below, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

## I. PROCEDURAL HISTORY

On March 31, 2011, Plaintiff filed his application for POD and DIB, alleging a disability onset date of October 1, 2010.[1]  (Transcript ("Tr.") 97.)  Plaintiff's claim was denied initially and upon reconsideration, and Plaintiff requested a hearing before an administrative law judge ("ALJ").  (*Id.*)  On November 20, 2012, an ALJ held Plaintiff's hearing.  (*Id.*)  Plaintiff participated in the hearing, was represented by counsel, and

---

[1]   Plaintiff later amended his alleged onset date to July 10, 2011.  (Tr. 97.)

testified.  (*Id.*)  A vocational expert ("VE") also participated and testified.  (*Id.*)  On February 15, 2013, the ALJ found Plaintiff not disabled.  (Tr. 94.)  On May 19, 2014, the Appeals Council declined to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision.  (Tr. 1.)

On July 23, 2014, Plaintiff filed his complaint to challenge the Commissioner's final decision.  (Doc. No. 1.)  The parties have completed briefing in this matter.  (Doc. Nos. 14, 16.)

Plaintiff asserts the following assignments of error: (1) The ALJ erred in finding that Plaintiff's mental impairments were not severe; and (2) the ALJ erred in finding that Plaintiff was capable of performing his past relevant work.

## II.    EVIDENCE

### A.    Personal and Vocational Evidence

Plaintiff was born in November 1964.  (Tr. 270.)  He had a high school education and was able to communicate in English.  (Tr. 297.)  He had past relevant work as an owner of a construction materials business.  (Tr. 106.)

### B.    Medical Evidence[2]

### 1.    Medical Reports

In February 2011, Plaintiff reported to the Veteran's Administration ("VA") that he "didn't believe that he was depressed other than the fact that he has pain issues that are

---

[2]    The ALJ found that Plaintiff had the following severe physical impairments: rheumatoid arthritis; right shoulder pain status post shoulder surgery; and back pain status post lumbar spine surgery.  (Tr. 99.)  Plaintiff's challenges to the ALJ's decision concern only his alleged mental impairments, however.  Accordingly, the Court will limit its summary of Plaintiff's medical records to evidence concerning his mental condition.

not resolved." (Tr. 510.) After Plaintiff complained of unresolved pain issues, a nurse practitioner conducted a depression screening and diagnosed Plaintiff with depression. (Tr. 527-531, 565.)

On January 9, 2012, Anthony Byrd, M.D., a neuropsychologist at the VA, evaluated Plaintiff. (Tr. 591-592.) Dr. Byrd noted that Plaintiff's examination results were inconsistent. (Tr. 592.) Plaintiff could not perform simple sequencing tasks but could perform complex cognitive sequencing tasks. (*Id.*) Dr. Byrd opined that Plaintiff had a tendency to convert his psychological pain into somatic complaints. (*Id.*) Dr. Byrd also found that this pattern of behavior was not consistent with any neurocognitive disease process, and that Plaintiff's psychological factors affected his physical condition. (*Id.*)

In March 2012, the VA referred Plaintiff to Joshua Shuman, Psy.D., a clinical psychologist, for a behavioral medicine assessment to determine the extent to which Plaintiff's psychological factors were contributing to his pain. (Tr. 574-579.) During the examination, Plaintiff alleged a high level of symptoms indicative of cognitive performance deficits, including difficulty with concentration, accomplishing tasks, and the need to double-check his work. (Tr. 577.) Plaintiff's results on the Minnesota Multiphasic Personality Inventory-2 ("MMPI-2") suggested that he was minimizing his psychiatric problems and attempting to appear well-adjusted. (*Id.*) Dr. Shuman noted that Plaintiff might actually experience a greater degree of symptoms than he reported. (*Id.*) He diagnosed Plaintiff with pain disorder associated with psychological factors and a general medical condition and assigned a GAF score of 53.[3] (Tr. 578.)

---

[3]     The GAF scale incorporates an individual's psychological, social, and occupational functioning on a hypothetical continuum of mental health illness devised by

On May 3, 2012, Plaintiff underwent an assessment with Ethan Bean, M.D., a psychiatrist at the VA.  (Tr. 694-697.)  Plaintiff complained of irritability or impatience most of the time; excessive worry; feelings of hopelessness and worthlessness; frustration; forgetfulness; and poor appetite.  (Tr. 694-695.)   During the evaluation, Plaintiff had good concentration and judgment, fair insight, and was coherent with normal speech and appropriate affect.  (Tr. 696.)  Dr. Bean noted that Plaintiff's psychological symptoms could be construed as an "adjustment reaction or somatoform," and assessed Plaintiff with adjustment disorder and pain disorder.  (Tr. 697.)  Plaintiff had a GAF score of 55, indicating moderate symptoms or moderate difficulty in social, occupational, or school functioning.  (*Id.*)

At follow-up therapy appointments, Plaintiff displayed normal findings during mental status examinations.  (Tr. 633, 692, 738, 742.)  In November 2012, Dr. Bean opined that Plaintiff's conditions–including rheumatoid arthritis, fibromyalgia, pain disorder associated with both psychological factors and a general medical condition, and depressive disorder–caused a significant degree of social and occupational impairment and that Plaintiff "should strongly be considered for disability benefits."  (Tr. 732.)

### 2.    Agency Reports

On June 1, 2011, consultative examiner Michael Wuebker, Ph.D., performed an independent psychological evaluation of Plaintiff on behalf of the Bureau of Disability Determination.  (Tr. 545.)  Plaintiff reported hopelessness and helplessness, moodiness, irritability, social isolation, lack of energy, difficulty concentrating, anhedonia, loss of libido,

_____

the American Psychiatric Association.  A GAF score between 51 and 60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning.

4

and sleep disturbances.  (Tr. 547.)  He stated that his relationships with his parents and siblings were "great" and that he related adequately with coworkers, supervisors, and the public while working.  (Tr. 545-546.)  Plaintiff reported that he developed depression several years ago, but he denied ever taking psychotropic medication or attending any mental health counseling.  (Tr. 546.)  On examination, Plaintiff achieved a full scale IQ score of 89, placing him in the low average range of intellectual functioning.  (Tr. 548.)  Dr. Wuebker assessed Plaintiff with depressive disorder and cognitive disorder not otherwise specified.  (Tr. 551.)  Dr. Wuebker opined that Plaintiff would have no limitations regarding social functioning in the workplace.  (Tr. 552.)  He also found that Plaintiff had no "clinical indications of difficulty with attention, concentration, persistence, or pace."  (*Id.*)  Dr. Wuebker assigned a GAF score of 55, indicating moderate symptoms or moderate difficulty in social, occupational, or school functioning.  (Tr. 551.)

In June 2011, state agency professional David Dietz, Ph.D., reviewed Plaintiff's medical record and opined that Plaintiff did not have a severe impairment.  (Tr. 171.)  In October 2011, another state agency professional Kristen Haskins, Psy.D., also concluded that Plaintiff did not have a severe mental impairment.  (Tr. 184.)

Albert Virgil, Ph.D., performed an independent psychological evaluation of Plaintiff in December 2012.  (Tr. 707-716.)  Dr. Virgil reported that Plaintiff did not appear to exaggerate symptoms or otherwise respond in a manner suggesting unreliability, but that he resented providing information to the examiner and at times did not do so.  (Tr. 710.)  He diagnosed Plaintiff with adjustment disorder and depressed mood.  (*Id.*)  Dr. Virgil opined that Plaintiff had no impairment in work-related mental activities.  (Tr. 713-714.)

**C.     Hearing Testimony**

5

### 1.    Plaintiff's Hearing Testimony

Plaintiff testified that he lost focus very quickly, was anti-social, and became frustrated when he had to talk to other people, likely due to a lack of concentration.  (Tr. 142, 143, 153, 154.)

### 2.    Vocational Expert's Hearing Testimony

Mr. Parsons, a vocational expert, testified at Plaintiff's hearing.  The VE testified that Plaintiff had past work as an owner and installer of construction materials.  (Tr. 155.)  The ALJ asked the VE to assume a hypothetical individual vocationally situated as Plaintiff who could perform light work except he could only occasionally climb ramps and stairs, stoop, and crouch; never climb ladders, ropes, and scaffolds; and frequently handle and finger. (Tr. 156.)  The VE testified that the hypothetical individual could perform Plaintiff's past work as an owner and operator of his own business.  (*Id.*)

### III.    STANDARD FOR DISABILITY

A claimant is entitled to receive benefits under the Social Security Act when he establishes disability within the meaning of the Act.  20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981).  A claimant is considered disabled when he cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. § 416.905(a).  To receive SSI benefits, a recipient must also meet certain income and resource limitations.  20 C.F.R. §§ 416.1100 *and* 416.1201.

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process.  20 C.F.R. §§ 404.1520(a)(4) *and* 416.920(a)(4); *Abbott v.*

*Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).  First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity" at the time he seeks disability benefits.  20 C.F.R. §§ 404.1520(b) and 416.920(b).  Second, the claimant must show that he suffers from a "severe impairment" in order to warrant a finding of disability.  20 C.F.R. §§ 404.1520(c) and 416.920(c).  A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities."  *Abbot*, 905 F.2d at 923.  Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d).  Fourth, if the claimant's impairment does not prevent him from doing his past relevant work, the claimant is not disabled.  20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f).  For the fifth and final step, even if the claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled.  20 C.F.R. §§ 404.1520(g), 404.1560(c), and 416.920(g).

## IV.   SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2016.

2.    The claimant has not engaged in substantial gainful activity since July 10, 2011, the amended alleged onset date.

3.    The claimant has the following severe impairments: rheumatoid arthritis; right shoulder pain status post shoulder surgery; and back pain status post lumbar spine surgery.

4.    The claimant does not have an impairment or combination of

7

impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except: occasionally climb ramps and stairs, stoop, and crouch; never climb ladders, ropes, and scaffolds; and frequently handle and finger.

6.    The claimant is capable of performing past relevant work as an Owner of Construction Materials Business (DOT Code No. 182.167-010, SVP 7, Light).  This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.

7.    The claimant has not been under a disability, as defined in the Social Security Act, from October 1, 2010, through the date of this decision.

(Tr. 99-107.)

## LAW & ANALYSIS

### A.    Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards.  *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010).  Review must be based on the record as a whole.  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ.  *Id.*  However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence.  *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by

substantial evidence in the record.  *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009).  Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Brainard*, 889 F.2d at 681.  A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion.  *Ealy*, 594 F.3d at 512.

### B.    Plaintiff's Assignments of Error

#### 1.  The ALJ Erred in Finding that Plaintiff's Mental Impairments were not Severe.

##### a. Severe Impairments (Step Two)

Plaintiff argues that the ALJ erred in finding that Plaintiff's mental impairments were not severe at step two of the sequential evaluation process.  In particular, Plaintiff maintains that the ALJ erred in assessing Plaintiff's GAF scores and the opinion of treating physician Dr. Bean when determining that Plaintiff's mental impairments were not severe. For the following reasons, Plaintiff's arguments do not require remand.

As a preliminary matter, even if the ALJ erred in concluding, at step two of his analysis, that Plaintiff's mental impairments were non-severe, that error is likely harmless. Although the determination of severity at the second step of a disability analysis is a *de minimis* hurdle in the disability determination process, *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988), the goal of the test is to screen out totally groundless claims, *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 89 (6th Cir.1985).  Once an ALJ determines that a claimant suffers a severe impairment at step two of his analysis, the analysis proceeds to step three; accordingly, any failure to identify other impairments or

combinations of impairments as severe would be only harmless error because step two would be cleared.  *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008) (citing *Maziars v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)); *Pompa v. Comm'r of Soc. Sec.*, 73 F. App'x 801, 803 (6th Cir. 2003) ("Because the ALJ found that Pompa had a severe impairment at step two of the analysis, the question of whether the ALJ characterized any other alleged impairment as severe or not severe is of little consequence.").  Here, although the ALJ concluded that Plaintiff's depressive disorder, adjustment disorder, cognitive disorder not otherwise specified, and pain disorder were non-severe, he found that Plaintiff's rheumatoid arthritis, right shoulder pain status post shoulder surgery, and back pain status post lumbar spine surgery were severe impairments.  (Tr. 99.)  Accordingly, Plaintiff cleared step two of the analysis, and Plaintiff's argument that the ALJ erred at step two is of no consequence.  *See Anthony*, 266 F. App'x at 457.

### b.  Residual Functional Capacity

In his first assignment of error, Plaintiff maintains that the ALJ erred in assessing his GAF scores and the opinion of treating physician Dr. Bean when determining that Plaintiff's mental impairments were not severe.  As explained above, however, even if the ALJ erred at step two of the sequential evaluation process, that error would likely be harmless, as the ALJ found that Plaintiff had at least one severe impairment and therefore Plaintiff cleared step two.  Nonetheless, the ALJ was required to consider Plaintiff's mental impairments when determining his residual functional capacity (RFC), as an ALJ must consider all of a claimant's impairments, severe and not severe, at every subsequent step of the sequential evaluation process.  *See* 20 C.F.R. § 404.1545(e).  Accordingly, the

10

Court will consider Plaintiff's arguments regarding his GAF scores and Dr. Bean's opinion as a challenge to the ALJ's RFC determination, rather than a challenge to the ALJ's findings at step two.

### i. GAF Scores

Plaintiff maintains that his GAF scores–which indicate moderate symptoms or moderate difficulties in social, occupational, or school functioning–demonstrate that he has mental work-related limitations.  This argument is not well taken.  In his opinion, the ALJ acknowledged that Plaintiff had been assessed with GAF scores of 53, 55, and 59, and that GAF ratings of 51-60 reflect moderate difficulty in social, occupational, or school functioning.  (Tr. 101.)  In discussing Plaintiff's GAF scores, the ALJ further noted:

> In this case, factors have been noted on Axis IV that the claimant had numerous stressors, including problems related to occupation, economics, and primary support group that have contributed to his GAF score[s], none of which elucidate the actual functional effects of his mental impairments.  It does not follow, therefore, that a GAF score indicating moderate symptoms translates directly into moderate degrees of limitation on the functional limitation scale used by Social Security in evaluating the "paragraph B" criteria.  The GAF scores are not dispositive for Social Security disability purposes.  These one-time assessments can be considered to provide a snapshot of the claimant's condition, including all of the social and occupational as well as psychological factors, but the GAF score does not prove the claimant has a severe impairment or an ongoing disability under Social Security regulations.

(Tr. 101.)  Thus, the ALJ concluded that despite the indication of moderate symptoms reflected in Plaintiff's GAF scores, Plaintiff had no limitation in the areas of activities of daily living, social functioning, and maintaining concentration, persistence, or pace.  (Tr. 102.)

A GAF score, alone, is not dispositive of an individual's functional abilities, particularly when substantial evidence shows that the claimant functions at a level greater

than the GAF score suggests.  *See Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir.2002) ("While a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy."); *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 511 (6th Cir.2006) ("If other substantial evidence (such as the extent of the claimant's daily activities) supports the conclusion that [a claimant] is not disabled, the court may not disturb the denial of benefits to a claimant whose GAF score is as low as [the claimant's] or even lower.").

The ALJ explained that Plaintiff's GAF scores were entitled to some weight, but that they were affected by numerous stressors including problems related to occupation, economics, and primary support group, and therefore did not elucidate the actual functional effects of Plaintiff's mental impairments.  (Tr. 101.)  Furthermore, the ALJ explained that, despite the GAF scores of record, Plaintiff's mental impairments did not affect his ability to work, because the evidence showed:

- Plaintiff's activities of daily living included adaptive activities such as cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for grooming and hygiene, using telephones and directories, and using a post office.  (Tr. 102.) Plaintiff testified that he could drive, shop, cook, and perform household chores, and that he was independent in his personal care.  (*Id.*)

- Plaintiff regularly interacted with his wife, children, and parents.  (Tr. 102.) He also interacted with others in his part time employment.  (*Id.*). As the ALJ observed, Dr. Virgil opined that Plaintiff had no limitation in maintaining social functioning, and Plaintiff failed to present convincing evidence otherwise.  (*Id.*)

- Plaintiff was able to drive and he continued to work part time performing bid work that required a great deal of concentration.  (Tr. 102.)  The ALJ concluded that Plaintiff's continued work activity directly contradicted his claim of decreased concentration and inability to focus.  (Tr. 105.) Furthermore, as the ALJ observed, Dr. Virgil opined that Plaintiff had no limitation in the area of maintaining concentration, persistence, or pace,

12

and Plaintiff did not present convincing evidence otherwise.  (Tr. 102.)

- •   The ALJ noted that two sets of state agency psychological consultants found Plaintiff's mental impairments to be non-severe, and that those opinions were entitled to great weight because they were consistent with the opinion of Dr. Virgil and the evidence of record as a whole. (Tr. 101.)

In determining Plaintiff's RFC, the ALJ adequately considered evidence of Plaintiff's mental limitations, including Plaintiff's GAF scores.  As the ALJ explained, Plaintiff's GAF scores were not dispositive of the functional effects of Plaintiff's mental impairments given the substantial evidence the record showing that Plaintiff had no limitations in the areas of activities of daily living, social functioning, and maintaining concentration, persistence, or pace.  Accordingly, Plaintiff's challenge to the ALJ's consideration of the GAF scores in Plaintiff's record has no merit.

### ii. Dr. Bean's Opinion

Plaintiff also challenges the ALJ's assessment of the opinion of his treating psychiatrist, Dr. Bean.  Dr. Bean concluded that Plaintiff's "conditions cause a significant degree of social and occupational impairment, and he should strongly be considered for disability benefits."  (Tr. 732.)  The ALJ gave "little weight" to Dr. Bean's opinion, explaining that the opinion "infringes upon the role of the Commissioner in ultimately determining eligibility for disability benefits and it is not supported by any clinical signs or objective diagnostic testing."  (Tr. 106.)  Plaintiff concedes that Dr. Bean's opinion concerns an issue reserved to the Commissioner and thus is not entitled to any special significance (Plaintiff's Brief ("Pl.'s Br.") 15), but maintains that the ALJ erred by not considering Dr. Bean's opinion in determining whether Plaintiff's mental impairments resulted in work-related limitations.  For the following reasons, Plaintiff's argument has no merit.

13

Dr. Bean opined that Plaintiff's conditions, including pain disorder and depressive disorder, "cause a significant degree of social and occupational impairment."  (Tr. 732.)  In making this assertion, Dr. Bean failed to point to any objective studies to support his conclusion and did not explain the extent to which Plaintiff is impaired due to his mental condition.  Furthermore, as the Commissioner notes in her Brief, Dr. Bean's treatment notes generally reflect normal findings during mental status examinations.  (Tr. 663, 692, 696, 738, 742.)  Accordingly, substantial evidence supports the ALJ's conclusion that Dr. Bean's opinion was entitled to little weight because it was not supported by any clinical signs or objective testing.

Finally, Plaintiff has failed to explain how the mere diagnosis of mental conditions supports a finding that Plaintiff's mental impairments are severe, or that they have any effect on his ability to perform work.  The ALJ acknowledged that Plaintiff had several mental impairments "variously characterized as depressive disorder, adjustment disorder, cognitive disorder not otherwise specified, and pain disorder."  (Tr. 100.)  The mere fact that Plaintiff was diagnosed with these conditions, however, does not explain how those impairments limited Plaintiff.  *See, e.g.*, *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("The mere diagnosis of arthritis, of course, says nothing about the severity of the condition."); *Foster v. Bowen*, 853 F.2d 483, 489 (6th Cir. 1988) ("The mere fact that plaintiff suffered from a dysthymic disorder . . . does not automatically entitle plaintiff to the receipt of benefits.  Rather, in order to qualify for the receipt of benefits . . . plaintiff must show that she was disabled by her dysthymic disorder.").  Here, the ALJ considered Plaintiff's treatment history, daily activities, and the medical opinions of record, and properly concluded that Plaintiff's mental impairments were not severe and that they did

14

not impact his RFC.  Accordingly and for the foregoing reasons, Plaintiff's first assignment of error is without merit.

### 2.  The ALJ Erred in Finding that Plaintiff was Capable of Performing His Past Relevant Work.

At step four of the sequential evaluation process, the ALJ concluded that Plaintiff was not disabled because he could perform his past work as an owner of a construction materials business (contractor) (Dictionary of Occupational Titles ("DOT") #182.167-010). (Tr. 106.)  Plaintiff argues that the ALJ erred in making this finding, because Plaintiff is incapable of performing the mental tasks required by the contractor job.  According to Plaintiff, his mental impairments have diminished his ability to concentrate and cause him to become easily frustrated when dealing with others.  For the following reasons, Plaintiff's argument is not well taken.

Plaintiff fails to cite any legal support for his blanket assertion that he is incapable of performing his past relevant work due to his self reports of difficulty concentrating and socializing.  Furthermore, other than Dr. Bean's opinion that Plaintiff has "a significant degree of social and occupational impairment," Plaintiff has failed to provide any physicians' opinions assessing specific functional limitations that result from his mental impairments.  As discussed previously in the Court's analysis of Plaintiff's first assignment of error, the ALJ thoroughly examined Plaintiff's activities of daily living, his ability to maintain social functioning, and his ability to maintain concentration, persistence, or pace, and concluded that Plaintiff had no limitations in those areas.  (Tr. 102.)  Furthermore, in determining Plaintiff's RFC, the ALJ considered the treatment notes of record; opinions from consultative examiners, state agency physicians, and Plaintiff's

treating physician; and Plaintiff's self reports, including his admitted ability to work part time, to determine that Plaintiff had the RFC to perform a limited range of light work.  (Tr. 103-106.)  Notably, Plaintiff reported to Dr. Wuebker that he related adequately to co-workers, supervisors, and the public while working (tr. 545-546), and Dr. Wuebker opined that Plaintiff had "no clinical indications of difficulty with attention, concentration, persistence, or pace" (tr. 552).  These findings are consistent with Dr. Virgil's report that Plaintiff had no limitations in interacting with others or maintaining concentration, persistence, or pace.  (Tr. 713-714.)  The ALJ expressly considered that evidence, and concluded that Plaintiff's mental impairments did not affect his capacity to perform light work, including his past work as a contractor.  As substantial evidence supports the ALJ's RFC determination and his conclusion at step four, Plaintiff's second assignment of error is without merit.

## VI.   CONCLUSION

For the foregoing reasons, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

s/ *Nancy A. Vecchiarelli*
U.S. Magistrate Judge

Date: March 17, 2015

## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**