IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Craig Eugene Byrne,                                    Case No. 3:14 CV 1633

          Plaintiff,                                   ORDER DENYING BENEFITS

        -vs-                                             JUDGE JACK ZOUHARY

Commissioner of Social Security,

          Defendant.

## INTRODUCTION

Plaintiff Craig Byrne timely filed a Complaint (Doc. 1) against the Commissioner of Social Security, seeking judicial review of the Commissioner's decision to deny his application for Period of Disability and Disability Insurance Benefits ("DIB").

This case was referred to Magistrate Judge Vecchiarelli for a Report and Recommendation ("R&R") pursuant to Local Rule 72.2(b)(2).  Following briefing (Docs. 14, 16–17), the Magistrate Judge recommended this Court affirm the Commissioner's final decision to deny DIB (Doc. 18). Byrne objects to the R&R (Doc. 19), and the Commissioner responded (Doc. 20).  Pursuant to *Hill v. Duriron Co.*, 656 F.2d 1208 (6th Cir. 1981), and 28 U.S.C. §§ 636(b)(1)(B) & (C), this Court has reviewed the R&R de novo.  For the reasons below, this Court adopts the recommendation to deny the claim for benefits.

## BACKGROUND

The R&R accurately recites the relevant factual and procedural background from the record, and this Court adopts that recitation in its entirety (Doc. 18 at 1–6).  Byrne is 50-years-old.  He

worked for 31 years prior to the alleged onset of his disability; for a portion of that time he owned a small construction firm.

Byrne challenges the ALJ's treatment of his mental health conditions (*id*. at 2 n.2). Medical professionals diagnosed Byrne with depression (for which he received prescription medication), cognitive and somatoform disorders. Byrne reports feeling antisocial, irritable, fatigued, and unable to concentrate.

## STANDARD OF REVIEW

Judicial review of the Commissioner's decision is limited to "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (quoting 42 U.S.C. § 405(g)). A procedural error can be a basis for overturning the Commissioner's decision, even if that decision is supported by substantial evidence. *See Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

## DISCUSSION

Byrne contends the ALJ erred at step four of the five-step analysis required under 20 C.F.R. § 404.1520. Step four provides that if a claimant's impairments do not prevent the claimant from performing past relevant work, the claimant is not disabled. *Id.* at §§ 404.1520 (e) – (f). The ALJ's residual functional capacity ("RFC") analysis included no work limitations stemming from Byrne's

2

alleged mental impairments. The ALJ therefore found Byrne was not disabled because he could perform his past relevant work as a construction firm owner. (To the extent Byrne objects that the ALJ erred at step two by failing to find his mental impairments "severe," this Court agrees with the R&R that any such error is harmless. At step two, the ALJ found Byrne suffered from "severe" physical impairments, and thus proceeded to step three of the five-step analysis (Doc. 18 at 9–10).)

Byrne argues a proper RFC analysis would have included all his demonstrated mental impairments and would have found him unable to perform his past relevant work. A construction firm owner must appropriately interact with others and perform detail-oriented work; Byrne asserts his mental impairments prevent him from doing either of these tasks. Byrne does not argue that he is disabled by his mental impairments, rather that the ALJ committed reversible error by failing to properly account for these impairments in his RFC analysis.

A "residual functional capacity is the most [work the applicant] can still do despite [the applicant's] limitations. [The Commissioner] will assess . . . residual functional capacity based on all the relevant evidence in [the] case record." 20 C.F.R. § 404.1545(a)(1). The RFC "is an assessment of what [Byrne] can and cannot do, not what []he does and does not suffer from." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002). Here, Byrne claims a range of evidence supports the inclusion of mental limitations in the RFC.

***Treatment of the Independent Examining Psychologist Opinions.*** Byrne notes the ALJ gave "great weight" to the opinions of two independent examining psychologists but "then failed to consider [] obviously significant mental limitations" identified by these psychologists (Doc. 19 at 4). Byrne argues that "[i]f an ALJ accepts a medical opinion, he must include the established limitations in the RFC finding" or explain why not (*id.*). But neither psychologist was a treating physician, *see*

3

*Pethers v. Comm'r of Soc. Sec.*, 580 F. Supp. 2d 572, 579 n.16 (W.D. Mich. 2008), meaning the "good reasons" rule does not apply to the ALJ's analysis of these opinions.

Even so, the ALJ explained why both opinions support the RFC. Dr. Michael Wuebker diagnosed Byrne with "depressive disorder and cognitive disorder not otherwise specified," but concluded "claimant would have no limitations regarding social functioning in the workplace" (Tr. at 101). Dr. Albert Virgil labeled Byrne a depressive with "adjustment disorder," but at the same time opined that "claimant has no impairment in work-related mental activities" (*id.*). The ALJ gave these opinions great weight because they were consistent with Byrne's behavior at the hearing, and with Bryne's "activities of daily living and the treatment evidence of record" (*id.*). An RFC must include limitations on a claimant's ability to work; it need not include a claimant's physical or mental diagnoses, except to the extent those diagnoses manifest themselves in work-related limitations. *See Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 632 (6th Cir. 2004). The ALJ properly accounted for the opinions of the examining psychologists.

***Substituting Lay Opinion for Expert Opinion***. Byrne argues that because the ALJ discussed no mental limitations in his RFC, even though the findings of medical professionals supported such limitations, the ALJ "substitute[d] her [sic] own lay opinion of mental illness for that of a medical expert" (Doc. 19 at 5). (Byrne does not specifically object to the ALJ discounting the assessment of treating psychiatrist Dr. Bean. This Court adopts the R&R's reasoning on this point (*see id.* at 13–15); the ALJ could discount Dr. Bean's opinion (that Byrne's conditions created work-related limitations, making him a candidate for disability benefits) because it was inconsistent with record medical evidence.)

4

"An ALJ does not improperly assume the role of a medical expert by weighing the medical and non-medical evidence before rendering an RFC finding." *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010). And again, though the independent consultants listed Byrne's own complaints of mental limitation, they also analyzed other tests and evidence, ultimately concluding that Byrne "had no impairment in work-related mental activities" (Tr. at 101; *see also id.* at 547, 551–52, 709–10, 711). The ALJ properly weighed the medical and non-medical evidence.

***ALJ's Treatment of Byrne's Work History.*** Byrne worked for 31 years prior to the onset of his disability, but stresses the ALJ "*never* discussed this significant credibility factor" (Doc. 19 at 7) (emphasis in original). The R&R does mention Byrne's work history as a basis for the ALJ to doubt the credibility of Byrne's complaints of mental limitations (*see id.*).

"[A]n ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003). Here, as the R&R explains (Doc. 18 at 15–16), the ALJ could conclude that Byrne's ability to engage in part-time work, among other evidence, tended to undermine claims that he lacked focus or the ability to work with others. His part-time work required him to examine blueprints and estimate how much a subcontractor should bid to install insulation (Tr. at 123), tasks that Bryne's alleged mental impairments imply he could not perform.

***Global Assessment Functioning ("GAF") Scores***. Byrne claims his GAF scores also should have led the ALJ to include mental limitations in the RFC. Byrne recorded three GAF scores that ordinarily indicate "moderate difficulty in social, occupational, or school functioning" (*id.* at 101). The ALJ gave the GAF scores "some weight," but explained (*id.*) (internal citations omitted):

5

> In this case, factors have been noted on Axis IV that the claimant had numerous stressors, including problems related to occupation, economics, and primary support group that have contributed to his GAF score, none of which elucidate the actual functional effects of his mental impairments. It does not follow, therefore, that a GAF score indicating moderate symptoms translates directly into moderate degrees of limitation on [the Commissioner's] functional limitation scale . . . .

In plain English, the GAF scores were in part the result of environmental factors, like financial difficulties and problems in interpersonal relationships, and not only the result of mental impairment. This is a reasoned basis to give the GAF scores less weight in the absence of Axis IV factors. The ALJ went on to note "the GAF score does not prove the claimant has a severe impairment or an ongoing disability under Social Security regulations" (*id.*), a statement which read in isolation misstates the RFC analysis. But, read in context, it is clear the ALJ did not ignore the scores when he crafted the RFC.

## CONCLUSION

At times, the Commissioner and the ALJ discuss Byrne's application in terms that could be read to miss the central issue in this appeal: whether substantial evidence supports the ALJ's decision to exclude mental limitations from his RFC. Because the R&R correctly holds substantial evidence does support the RFC, Byrne's Objection (Doc. 19) is overruled, and this Court adopts the R&R (Doc. 18). The claim for benefits is denied.

IT IS SO ORDERED.

    s/ *Jack Zouhary*
JACK ZOUHARY
U.S. DISTRICT JUDGE

April 17, 2015